# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**WINEBOW, INC.,**

    Plaintiff,

-vs-                              Case No. 15-CV-00225

**CAPITOL-HUSTING CO., INC.** and
**L'EFT BANK WINE COMPANY LIMITED,**

    Defendants.

## DECISION AND ORDER

The Plaintiff, Winebow, Inc. ("Winebow"), filed this action seeking declaratory judgment, pursuant to 28 U.S.C. § 2201, that under the Wisconsin Fair Dealership Law ("WFDL"), Chapter 135, Wis. Stats., its newly appointed distributor for its wines may continue to distribute them; Winebow may terminate any and all remaining wine distribution relationships with Defendants Capitol-Husting Co., Inc. and L'eft Bank Wine Company Limited (collectively the "Defendants"); and that it has no continuing obligations to the Defendants, by way of contract, statute, or otherwise. Subject matter jurisdiction is based on 28 U.S.C. § 1332, because the matter in controversy exceeds $75,000 exclusive of interest and costs and, based on state of incorporation and principal place of business, the Defendants are citizens of Wisconsin and Winebow is citizen of

Delaware and New Jersey.

Since the basis of jurisdiction is diversity, this Court is bound to apply state substantive law and federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). The Court's ultimate aim is to apply the WFDL as it has been interpreted by the Wisconsin Supreme Court. *See James Michael Leasing Co. LLC v. PACCAR, Inc.,* 772 F.3d 815, 820 (7th Cir. 2014) (Regarding interpretation of Wisconsin's Lemon Law.) "In the absence of an authoritative interpretation from the Wisconsin Supreme Court," the Court must interpret the WFDL "as [it] think[s] the state's highest court would construe it." *Laborers Local 236, AFL-CIO v. Walker,* 749 F.3d 628, 634 (7th Cir. 2014).

This matter comes before the Court on Defendants' motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Defs.' Mot. Dismiss 1.) (ECF No. 4.) In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

## BACKGROUND

Winebow, a Delaware corporation with its principal place of business in New Jersey, imports and distributes wine. (Compl. ¶ 1.) (ECF No. 1.) The Defendants, Wisconsin corporations with their principal place of business in Wisconsin, are wholesale distributors of wines in Wisconsin, including some imported by Winebow. (*Id.* at ¶¶ 2-3.) Before initiating this litigation, Winebow provided notice to the Defendants of the termination of their business relationship. (*Id.* at ¶ 18.) Each of the Defendants responded by letter, alleging that it is a protected "dealer" under the WFDL due to its prior sales of Winebow wines. (*Id.* at ¶¶ 21-22.) There is no written agreement between Winebow and either of the Defendants. (*Id.* at ¶¶ 9, 14.) Since Winebow was in apprehension of litigation, it sought a declaration from this Court that the Defendants have no right to continue selling Winebow wines. (*Id.* at ¶ 23.) Underlying the action is Winebow's contention that the relationships do not qualify for protection under Wisconsin law because wine is exempt from the WFDL. (*Id.* at ¶¶ 11, 16.)

## ANALYSIS

The question presented is straightforward: Are the Defendants protected dealerships under the WFDL? The question turns on whether

- 3 -

wine, the principal product in the business relationships, is "intoxicating liquor" in the context of the WFDL. If it is, the Defendants are protected dealerships, Chapter 135 limitations on unilateral termination rights apply, and the motion to dismiss should be granted. If it is not, the Defendants are *not* protected dealerships, Chapter 135 limitations do *not* apply, and the motion to dismiss should be denied.

Some background on the WFDL sheds light on this inquiry. The WFDL was passed in order to combat the substantial economic power disparity between grantors and in-state dealers. *See* Wis. Stat. § 135.025(2)(b). It sought to significantly limit the ability of the grantor, even in tough economic times, to change its business relationship with a dealer. It did not, however, "intend to insulate dealers from all economic reality at the expense of grantors." *Ziegler Co., Inc. v. Rexnord, Inc.*, 147 Wis. 2d 308, 433 N.W.2d 8, 12 (Wis. 1988). Grantors' economic and business situations may constitute good cause to change the relationship, "but such changes must be essential, reasonable and nondiscriminatory." 433 N.W.2d at 11. The WFDL prevents "suppliers from behaving opportunistically once franchisees or other dealers have sunk substantial resources into tailoring their business around, and promoting, a brand." *Kenosha Liquor Co. v. Heublein, Inc.*, 895 F.2d 418, 419 (7th Cir. 1990).

The central question in this case is not whether this *type* of change in the grantor-dealer relationship — termination — is permitted under the WFDL, but rather whether the Defendant wine dealers are WFDL-protected businesses. Several WFDL cases have addressed the termination of a dealership involved in distributing wine. In *Lee Beverage Co. v. I.S.C. Wines of Cal., Inc.*, 623 F. Supp. 867, 869 (E.D. Wis. 1985) it was undisputed that Chapter 135 governed the relationship between the distributor that distributed wine and brandy to dealer. *See also Wine Imports of Am., Ltd. v. Gerolmo's Liquors, Ltd.,* 563 F. Supp. 163, 167 (E.D. Wis. 1983) (holding that based on the facts of record a dealer did not have successor liability under the WFDL); *Bruno Wine & Spirits, Inc. v. Guimarra Vineyards,* 573 F. Supp. 337, 340 (E.D. Wis. 1983) (regarding the statutory exception to the notice requirement for termination or change in dealership status under the WFDL).

However, 1999 amendments to the WFDL substantially altered the provisions dealing with alcoholic beverages.[1] Wis. Stat. § 135.066. Under

---

[1] Wis. Stat. § 135.066(1) sets forth the following legislative findings:

> The legislature finds that a balanced and healthy 3-tier system for distributing intoxicating liquor is in the best interest of this state and its citizens; that the 3-tier system for distributing intoxicating liquor has existed since the 1930's; that a balanced and healthy 3-tier system ensures a

the current WFDL, intoxicating liquor dealerships are subject to unique qualifications. Chief among these is the term "intoxicating liquor" itself, the definition of which is the focus of this case. The parties have not cited, nor has the Court's research disclosed, Wisconsin or federal cases addressing the issue of whether wine dealers such as the Defendants fall within the scope of the current provisions of the WFDL.

As with every endeavor at statutory interpretation, the inquiry "begin[s] with the language of the statute," giving "words their common and ordinary meaning unless those words are technical or specifically defined." *Bank Mut. v. S.J. Boyer Const., Inc.,* 326 Wis. 2d 521, 785 N.W.2d 462, 468 (Wis. 2010). Two statutory provisions speak directly to

> level system between the manufacturer and wholesale tiers; that a wholesale tier consisting of numerous healthy competitors is necessary for a balanced and healthy 3-tier system; that the number of intoxicating liquor wholesalers in this state is in significant decline; that this decline threatens the health and stability of the wholesale tier; that the regulation of all intoxicating liquor dealerships, regardless of when they were entered into, is necessary to promote and maintain a wholesale tier consisting of numerous healthy competitors; and that the maintenance and promotion of the 3-tier system will promote the public health, safety and welfare. The legislature further finds that a stable and healthy wholesale tier provides an efficient and effective means for tax collection. The legislature further finds that dealerships between intoxicating liquor wholesalers and manufacturers have been subject to state regulation since the enactment of the 21st Amendment to the U.S. Constitution and that the parties to those dealerships expect changes to state legislation regarding those dealerships.
- 6 -

Case 2:15-cv-00225-DEJ   Filed 06/18/15   Page 6 of 11   Document 19

the definition of "intoxicating liquor:" (1) § 125.02(8) defines intoxicating liquor as "all ardent, spirituous, distilled or vinous liquors, liquids or compounds, whether medicated, proprietary, patented or not, and by whatever name called, containing 0.5% or more of alcohol by volume, which are beverages, but does not include 'fermented malt beverages'"; (2) Section 135.066 defines intoxicating liquor as having "the meaning given in s. 125.02(8) *minus wine.*" (Emphasis added.) Taken together, the scope of the term is clear: "intoxicating liquor" explicitly excludes wine. Any attempt to magically interpret the § 135.066 language to *include* wine would render "minus wine" surplusage and, therefore, would be an incorrect interpretation of the statute.

The first, and oftentimes only, step in statutory interpretation is to determine the legislature's intent as revealed through statutory language: "[i]t is the enacted law, not the unenacted intent, that is binding on the public." *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 271 Wis. 2d 633, 681 N.W.2d 110, 124 (Wis. 2004). This Court's job is not to creatively explore every available extrinsic source to shape the meaning of an otherwise unambiguous term. "One cannot look to a statute's legislative history to evaluate ambiguity; it is only after ambiguity is determined that we resort to legislative history." *Indus. to Indus., Inc. v. Hillsman*

*Modular Molding, Inc.,* 247 Wis. 2d 136, 633 N.W.2d 245, 248 (Wis. Ct. App. 2001) *aff'd*, 252 Wis. 2d 544, 644 N.W.2d 236 (Wis. 2002). This Court's job is rather to give force to the unambiguous intent of the elected legislature as expressed through the text of statutes.

Thus, if the text of a statute is unambiguous, as here, the statutory interpretation inquiry is at an end. This approach prevents a distortion of a complicated, and oftentimes messy, legislative process. It promotes the integrity of the democratic system as a whole, and encourages careful drafting of statutes by legislatures.

The Defendants' contention that the § 125.02 definition of "intoxicating liquor" is different from the § 135.066 definition strains credulity. They argue that if the subject matter of certain statutory provisions are "disparate," the meaning of the term may vary. (Reply Br. Supp. Mot. Dismiss 2.) (ECF No. 18.) This argument, seeking to limit the *in pari materia* canon of statutory interpretation, might carry weight for statutes very distant in time and subject matter. But § 135.066 addresses the benefits of a "healthy 3-tier system for distributing intoxicating liquor" and § 125.02(8) offers definitions in a chapter of Wisconsin law dedicated to the legal status of alcoholic beverages. This *slight* difference in topic does not alter the reality that both provisions directly address intoxicating

- 8 -

liquor and should be read *in pari materia*. Moreover, § 135.066 specifically *references* § 125.02(8) in defining "intoxicating liquors," just as § 135.02(3)(b), the WDFL definitions section, directly references businesses "as defined in s. 125.02(21)." Wis. Stat. § 135.02. The two statutory provisions therefore must be read together in order to ensure the coherence of the statutory scheme as a whole.

The Defendants also urge the Court to consult common usage despite the existence of a definition within the statute. They argue that the word "liquor" in common parlance is ambiguous as to whether it includes wine, and this very ambiguity makes the *full* statutory term, "intoxicating liquor," plain and unambiguous. (Reply Br. Supp. Mot. Dismiss 9-10.) But controlling Wisconsin law prohibits the use of the ordinary meaning canon when a term is specifically defined by statute. *See Wis. Citizens Concerned for Cranes & Doves v. Wis. Dep't of Natural Res.*, 270 Wis. 2d 318, 677 N.W.2d 612, 617 (Wis. 2004) ("Words that are defined in the statute are given the definition that the legislature has provided."); *Beard v. Lee Enters., Inc.*, 225 Wis. 2d 1, 591 N.W.2d 156, 165 (Wis. 1999) ("Where a word or phrase is specifically defined in a statute, its meaning is as defined in the statute, and no other rule of statutory construction need be applied."); *Republic Airlines, Inc. v. Wis. Dep't of*

*Revenue*, 159 Wis. 2d 247, 464 N.W.2d 62, 64 (Wis. Ct. App. 1990) ("When words are defined by statute, we look nowhere else for the meaning and apply only the legislature's definition."). If courts can't rely on definitions contained within laws, whole swaths of the Wisconsin Statutes dedicated to these definitions would be rendered meaningless. More importantly, the clear mandate of a democratically-elected legislature would be thwarted. Courts *must* accord the provided definitions with deference. Intoxicating liquor is specifically defined to exclude wine; it does not matter how ordinary citizens might understand the scope of the term.

## CONCLUSION

This Court's role is not to make policy judgments about the most economically fair or effective classification of dealerships in the State of Wisconsin. Its role is merely to give force to the unambiguous intent of Wisconsin's elected legislature as expressed through the text of statutes.

The statutory definition of "intoxicating liquor" is clear, and wine is expressly excluded. This Court declines to indulge in a needless exploration of legislative history when the meaning of this key term is explicit in the text. Wine is not intoxicating liquor in the context of the WFDL, and thus the Defendants' business relationship with Winebow is not subject to the unilateral termination limitations of Chapter 135.

- 10 -

Case 2:15-cv-00225-DEJ   Filed 06/18/15   Page 10 of 11   Document 19

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

The Defendants' motion to dismiss for failure to state a claim (ECF No. 4) is **DENIED**.

Dated at Milwaukee, Wisconsin, this  **18th**  day of June, 2015.

                                                  **BY THE COURT:**

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**